UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Eddie Niles Hubbard,

        Petitioner,

v.

Vicki Janssen,

        Respondent.

Case No. 16-cv-4101 (DSD/SER)

REPORT AND RECOMMENDATION

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Petitioner Eddie Niles Hubbard's ("Hubbard") Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Habeas Petition") [Doc. No. 1].[1] This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b) and District of Minnesota Local Rule 72.1. For the reasons stated below, the Court recommends the Habeas Petition be denied and this case be dismissed.

**I.    BACKGROUND**

    **A.    Background in State Court**

On May 10, 2013, Hubbard fatally shot his friend J.C. *State v. Hubbard*, No. A14-1259, 2015 WL 4714802, at *1 (Minn. Ct. App. Aug. 10, 2015), *review denied* (Minn. Oct. 28, 2015). The victim, his girlfriend K.S., and K.S.'s children had lived with Hubbard on and off for several months. *Id.* The week before the shooting, Hubbard and J.C. had several arguments. *Id.* In one incident, J.C., K.S., and K.S.'s children arrived at Hubbard's home expecting to find "a key for them in the usual place." *Id.* Hubbard, however, refused to let them inside. *Id.* J.C. looked for the

---

[1] When referring to the Habeas Petition, the Court uses the page numbers assigned by CM/ECF.

key at the back of the house, and when he returned to the front of the house, he was holding a brick and told K.S. that Hubbard "had called some people to come over and do something to him." *Id.* J.C. put the brick down at K.S.'s request, and the police arrived. *Id.* Hubbard and J.C. later spent about three hours together, after which J.C. "told K.S. that they could stay at [Hubbard's] house through the end of the month." *Id.*

On May 10, 2013, J.C. and K.S. decided that they needed to leave Hubbard's home after Hubbard texted K.S. to say that he wanted them to leave. *Id.* J.C. spoke to Hubbard and then returned to the room he and K.S. had been using. *Id.* He told K.S. that Hubbard wanted them to pack their belongings and leave. *Id.* While J.C. and K.S. were packing, Hubbard began yelling up the stairs, calling J.C. names and complaining about J.C.'s refusal to accompany Hubbard to the pharmacy. *Id.* at *2. Hubbard approached the bedroom, and K.S. turned her back to him. *Id.* She then "felt something pushing hard on her back," and when she turned, she saw it was a black shotgun. *Id.*

> K.S. began crying and begged [Hubbard] to put the gun down. As K.S. walked from side to side, [Hubbard] followed her movements with the gun. K.S. walked over to where J.C. was standing, and [Hubbard] lowered the gun. [Hubbard] said to J.C., "You can talk to this b . . . ch but you can't talk to me? What, I'm not good enough for you? You can't even come to the pharmacy with me?" J.C. replied that he was packing as [Hubbard] had requested. [Hubbard] raised the gun, pumped it, and moved the barrel back and forth, alternately pointing it at K.S. and J.C. J.C. yelled at [Hubbard] to put the gun down, and [Hubbard] pulled the trigger, fatally shooting J.C. in the abdomen. K.S. had been standing right next to J.C., and her back was spattered with his blood. K.S. testified that she did not see a weapon in J.C.'s hand and did not see J.C. threaten or make any movement toward [Hubbard].
>
> [Hubbard], who was shaking badly and still had the gun in his hand, walked over to K.S. and said, "It was an accident, say it was an accident!" [Hubbard] then pointed the gun at K.S., who was holding her children on her lap, and said, "You better tell the police it was a f . . . ing accident." K.S. promised to do so, and [Hubbard] ran out of the room. K.S. called 911 as soon as [Hubbard] left the room. When police arrived a few minutes later, [Hubbard] had fled from

the house. Shortly after the shooting, [Hubbard] gave varying accounts of it to a 911 operator and friends.

*Id.* Hubbard was charged with second-degree intentional murder and four counts of second-degree assault. *Id.* at *1. "In addition to the charged offenses, two lesser included offenses were submitted to the jury[]": first-degree intentional manslaughter and second-degree unintentional murder. *Id.* at *3. "The jury found [Hubbard] guilty of first-degree manslaughter and one count of second-degree assault." *Id.*

After the trial, Hubbard made the following arguments in his appeal to the Minnesota Court of Appeals:

> (1) the manslaughter conviction must be reversed because the evidence was insufficient to prove that he intended to cause the victim's death and that he was not acting in self-defense; (2) the assault conviction must be reversed because the evidence was insufficient to prove that he intended to cause the victim fear of immediate bodily harm or death; (3) the district court denied him a meaningful opportunity to present a complete defense; (4) the district court erred in instructing the jury on self-defense; and (5) evidence of other bad acts was irrelevant and not probative and, therefore, should have been excluded.

*Id.* at *1. The Minnesota Court of Appeals affirmed the conviction, and the Minnesota Supreme Court denied review on October 28, 2015. *See id.* Hubbard did not file a petition for a writ of certiorari from the United States Supreme Court.[2]

### B. Background in Federal Court

Hubbard filed his Habeas Petition on December 7, 2016, raising the following grounds for relief: (1) the evidence was insufficient to establish that Hubbard acted with the requisite intent instead of acting in self-defense; (2) the evidence was insufficient to prove that Hubbard

---

[2] Although Hubbard checked a box on his form Habeas Petition stating that he filed a petition for a writ of certiorari, the case information he provided is that of his petition for review to the Minnesota Supreme Court. (Habeas Pet. at 3); *see also* (Mem. of Law in Opp'n to Habeas Pet., "State's Mem. in Opp'n") [Doc. No. 14 at 2] ("Petitioner did not petition the United States Supreme Court for a Writ of Certiorari.").

"intended to cause K.S. fear of immediate bodily harm or death"; (3) the trial court denied Hubbard's right to a meaningful defense when it did not allow Hubbard to cross-examine K.S. about breaking into his home; and (4) the jury instructions were unconstitutional because "the district court did not properly instruct the jury" regarding Hubbard's self-defense claim. (Habeas Pet. at 5, 7–8, 10). In the Memorandum accompanying his Petition, Hubbard raises numerous additional grounds for relief. *See* (Mem.) [Doc. No. 4-1].[3] These additional grounds are: (5) ineffective assistance of trial counsel;[4] (6) the trial court erred in denying his request for a different attorney; (7) both the prosecutors and defense counsel failed to use certain evidence; (8) the trial court "gave a defective reasonable doubt instruction to the jury" in violation of the Fifth and Sixth Amendments; (9) the trial court erred in providing additional instructions and an additional criminal charge to the jury in the absence of Hubbard and his counsel; (10) the trial "[c]ourt erred when it gave [an] aggravated sentence for children" when Hubbard was not convicted of child-related charges; (11) the delays caused by disputes regarding whether Hubbard qualified for a public defender prejudiced Hubbard because witnesses forgot the accounts they gave law enforcement officers; (12) the trial court erred in limiting the scope of cross-examination with respect to one of the investigators; (13) the trial court erred in admitting evidence of Hubbard's prior bad acts; (14) the trial court abused its discretion when it disallowed

---

[3] Hubbard's substantive memorandum is attached to a form Memorandum of Law that states only "see attached memorandum." [Doc. No. 4]. Therefore, the Court's references to the Memorandum refer to Document Number 4-1.

[4] Hubbard's ineffective-assistance-of-trial-counsel claim is based on the following arguments: (1) counsel failed to request a speedy trial by the required deadline; (2) counsel failed to notify the court of witness tampering; (3) counsel failed to investigate and present testimony in support of Hubbard's innocence; (4) counsel did not cross-examine the witnesses who testified for the prosecution to elicit facts that supported the theory that Hubbard acted in self-defense; (5) counsel failed to object to "tainted evidence" that formed the basis of the government's case; (6) counsel was not present when the judge provided the jury with additional instructions and an additional criminal charge; and (7) counsel conceded without Hubbard's permission that he "was guilty of heat of passion manslaughter." (Mem. at 1); *see also* (*id.* at 2, 4, 7–12, 17, 27).

photographic evidence of J.C. holding a shotgun; (15) the trial court erred in discouraging the jury from taking notes; (16) the trial court erred in prohibiting evidence related to J.C.'s mental health history and arrest record; (17) the trial court erred in refusing the jury's request to read K.S.'s testimony; (18) the trial court erred in permitting the prosecutor's improper closing argument; and (19) the prosecution improperly excluded individuals who were young, college-educated, African-American, and male in violation of the constitution. *See* (*id.*). Hubbard's Memorandum also repeats and expands upon certain grounds raised in the Petition. *See* (*id.* at 13, 25–27).

Respondent Vicki Janssen (the "State") argues that most of Hubbard's claims are procedurally defaulted, and the claim that is arguably fully exhausted—whether the prosecution sufficiently disproved Hubbard's self-defense argument—fails on the merits. *See generally* (State's Mem. in Opp'n); *see also* (*id.* at 12–13).

## II. DISCUSSION

Hubbard's claims are procedurally defaulted. Only one claim—whether self-defense was sufficiently disproved—was raised before the Minnesota Supreme Court.[5] (App.) [Doc. No. 16 at 96]. The Court first discusses the self-defense claim, and then discusses the remaining claims.

### A. Legal Standard

A federal district court may entertain a state prisoner's application for a writ of habeas corpus only when the petitioner has exhausted the state court remedies. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion requirement has been summarized as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and

---

[5] The Court refers to this claim as the self-defense claim.

> correct alleged violations of its prisoners' federal rights. To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations and quotation marks omitted). Accordingly, to exhaust his state court remedies, a petitioner must fairly present his constitutional claims to the highest available state court before seeking relief in federal court. *O'Sullivan*, 526 U.S. at 845. "A petitioner meets the fair presentation requirement if the state court rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999).

When a petition contains claims that have not been fairly presented to the highest available state court, these claims are unexhausted and a court must determine whether state procedural rules would allow a hearing on the merits. *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). If the state's procedural rules preclude a hearing on the merits, the petitioner has procedurally defaulted and is procedurally barred from federal habeas relief unless either cause and prejudice or a miscarriage of justice can be shown. *Id.*

Minnesota law provides that all matters raised in a petitioner's direct appeal and all claims known but not raised are barred from consideration in a subsequent post-conviction petition. *Id.* (citing *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976)). A petitioner can avoid the state court procedural bar only by demonstrating cause for default and actual prejudice as a result of the violation of federal law or by showing that "failure to consider his claims would result in a fundamental miscarriage of justice." *McCall*, 114 F.3d at 758.

## B. Analysis

### 1. Self-Defense Claim

In his Petition for Review ("PFR") before the Minnesota Supreme Court, Hubbard framed the sole legal issue as: "Does the state disprove a self-defense claim when a defendant used a firearm in his own home based on his perception of imminent danger arising from the decedent's recent violence rather than a threat immediately expressed by the decedent?" (App. at 96). In support, Hubbard points to J.C.'s violent history. (App. at 101–03).

Construing Hubbard's Habeas Petition liberally, the question before the Minnesota Supreme Court aligns with the claim in Hubbard's Habeas Petition that he acted in self-defense. *See* (Habeas Pet. at 5). Even more directly, in his Memorandum, Hubbard argues that the "Court ignored the history of violence by the victim that would necessarily factor in petitioner's decision to protect himself and limited [the] jury's analysis to the immediate moment rather than examining the context of the situation and J.C.'s violent history." (Mem. at 24). In support, Hubbard describes several events in the week preceding J.C.'s death where J.C. behaved in a violent manner. *See* (*id.*). Thus, construing Hubbard's Habeas Petition liberally, the Court concludes that the self-defense claim was raised to the Minnesota Supreme Court. *See Jones v. Jerrison*, 20 F.3d 849, 854 (8th Cir. 1994) ("To 'fairly present' his claim, the petitioner must present the same facts and legal theories to the state court that he later presents to the federal courts.").

The claim is not exhausted, however, because Hubbard did not give the Minnesota Supreme Court fair notice that his claim arose under the United States Constitution.

> In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts.

*McCall*, 114 F.3d at 757 (internal quotation marks omitted). Hubbard's PFR does not refer to "a specific federal constitutional right, a particular constitutional provision, [or] a federal constitutional case." *See id.*; *see also* (App. at 96–105). Likewise, the state cases cited in Hubbard's PFR do not raise "a pertinent federal constitutional issue." *See McCall*, 114 F.3d at 757; *see also* (App. at 96–105). Thus, Hubbard failed to fairly present his self-defense claim to the Minnesota Supreme Court, and that claim is unexhausted.

To determine whether this claim is procedurally defaulted, the Court must consider whether state procedural rules would allow a hearing on the merits. *McCall*, 114 F.3d at 757. Minnesota would not permit this claim in a subsequent post-conviction petition because it was raised in Hubbard's direct appeal. *See id.* (citing *Knaffla*, 243 N.W. 2d at 741). Even if it had not been raised in his direct appeal, Hubbard would be barred from raising it in a post-conviction petition because he knew of the claim at the time of his direct appeal. *See id.* Because state procedural rules prohibit the self-defense claim from being heard on its merits, this claim is procedurally defaulted.

### 2. Remaining Claims

As stated above, the only claim raised in Hubbard's PFR is the self-defense claim. (App. at 96). Thus, the remaining claims in Hubbard's Habeas Petition are unexhausted because they were not raised to the Minnesota Supreme Court. *See O'Sullivan*, 526 U.S. at 845. Further, because the remaining claims arise out of trial and do not rely on new evidence, Hubbard knew about them at the time of his direct appeal, rendering the remaining claims procedurally defaulted. *See McCall*, 114 F.3d at 757 (citing *Knaffla*, 243 N.W.2d at 741).

One of these remaining claims requires further analysis: Hubbard argues that the trial court "erred when it gave [an] aggravated sentence for children when [Hubbard] had been

acquitted of [those] charges." (Mem. at 16). In support, Hubbard cites several cases, one of which appears to raise an argument that Hubbard is entitled to raise this claim in post-conviction proceedings, even if he did not raise it on direct appeal. *See* (*id.*) (citing *State v. Johnson*, 653 N.W.2d 646 (Minn. Ct. App. 2002), for the proposition that "[o]bjection to multiple sentences for the same behavioral incident may be raised in post-conviction proceedings even if not raised on direct appeal because the defendant cannot waive the prohibition against double punishment"). The general rule in Minnesota is that a trial court may not impose "more than one sentence for a single behavioral incident." *Johnson*, 653 N.W.2d at 653; *see also* Minn. Stat. § 609.035. A "judicially created exception," however, "precludes its application when there are multiple victims." *Johnson*, 653 N.W.2d at 653.

The record reflects that Hubbard's sentences are to run consecutively. (Register of Actions, Attached to Exs.) [Doc. No. 5 at 26–27][6] (reflecting sentences for first-degree manslaughter and second-degree assault and describing the second-degree-assault sentence as consecutive). The convictions and their subsequent sentences stem from one behavioral incident that took place at the same time but had two victims: first-degree manslaughter, against J.C., and second-degree assault, against K.S. *See Hubbard*, 2015 WL 4714802, at \*3, 7–8. Because Hubbard's sentences do not implicate the holding in *Johnson*, he is not able to seek post-conviction relief. *Cf. Johnson*, 653 N.W.2d at 653 ("[H]ad appellant been sentenced for the criminal-sexual-conduct charge committed against D.L. (count one) and the assault charge committed against A.H. (count four), this exception arguably would have permitted the imposition of consecutive sentences." (emphasis omitted)).

---

[6]     The cited page numbers refer to those assigned by CM/ECF.

To the extent Hubbard's argument is based on a sentencing enhancement or departure, his argument is unavailing. The Minnesota Court of Appeals in *Johnson* also held that "[a]ppellant knew or should have known about each of his current sentencing departure arguments at the time of his direct appeal." 653 N.W.2d at 649. Thus, to the extent Hubbard argues any aggravated sentence was error, that claim could have been raised on direct appeal and is therefore procedurally defaulted. *See McCall*, 114 F.3d at 757 (citing *Knaffla*, 243 N.W.2d at 741).

The Court concludes the claims in Hubbard's Habeas Petition are procedurally defaulted. Hubbard does not argue that any of the exceptions—cause for default, actual prejudice, or a fundamental miscarriage of justice—apply, and there is nothing in the Habeas Petition or accompanying Memorandum to suggest that they apply. Therefore, the Court recommends the Habeas Petition be denied, and this case be dismissed with prejudice. *See Armstrong v. Iowa*, 418 F.3d 924, 927 (8th Cir. 2005) (stating that a district court properly dismisses procedurally defaulted claims with prejudice).

## III. CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Hubbard's claims any differently than they have been decided here. Hubbard has not identified (and the Court cannot independently discern) anything novel, noteworthy, or worrisome about this case that warrants appellate review. Therefore, the Court recommends that Hubbard not be granted a COA in this matter.

## IV. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner Eddie Niles Hubbard's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Doc. No. 1] be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. If this Report and Recommendation is adopted, a certificate of appealability should not issue, and judgment should be entered accordingly.

Dated: August 31, 2017

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).